IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**MARIA CONSUELO GARCIA**                                                      **PLAINTIFF**

**v.**                                             **CIVIL ACTION NO. 3:21-cv-86-JMV**

**COMMISSIONER OF
SOCIAL SECURITY**                                                      **DEFENDANT**

## ORDER

This matter is before the court on Plaintiff's complaint [1] for judicial review of the Commissioner of the Social Security Administration's denial of an application for supplemental security income and disability insurance benefits. The undersigned held a hearing on March 29, 2022 [30]. Having considered the record, the administrative transcript, the briefs of the parties, the oral arguments of counsel and the applicable law, the undersigned finds the Commissioner's decision is supported by substantial evidence and that said decision should be affirmed.

### Standard of Review

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Statement of the Case**

On February 8, 2019, Plaintiff protectively filed her application for DIB and SSI, alleging her disability commenced on May 11, 2016. She was born on March 2, 1978, and was 38 years old, which is defined as a younger individual. She has an eleventh-grade education, and past relevant work experience as an inspector, general.

The Commissioner denied Plaintiff's applications initially on June 17, 2019, and on reconsideration on August 26, 2019. Pursuant to Plaintiff's request, ALJ Roger Lott held a hearing on June 30, 2020. Plaintiff, her attorney, and Claire Ziegler, vocational expert, appeared at the hearing. The ALJ issued a hearing decision on July 13, 2020, finding Plaintiff not disabled.

The ALJ evaluated Plaintiff's claims pursuant to the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since her alleged onset date of May 11, 2016. At step two, the ALJ found that the Plaintiff had the following severe impairments: cervicalgia, migraine, PTSD, and personality disorder. At step three, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or equaled the criteria of an impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings).

The ALJ then assessed Plaintiff's RFC, and found that the Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except she can:

> occasionally climb ramps and stairs and can never climb ladders, ropes or scaffolds. The claimant can occasionally balance and stoop. The claimant can occasionally reach overhead with the right arm. The claimant can frequently handle, finger and feel with the right hand. The claimant should avoid working around unprotected heights, hazardous moving machinery and in temperature extreme environments. The claimant can understand, remember and carry out simple instructions and perform simple routine and repetitive tasks. The claimant can sustain attention, concentration and persistence on task for 2-hour periods throughout an 8-hour workday with normal breaks. The claimant can occasionally interact with supervisors and coworkers but never with the general public. The claimant can adapt to simple, infrequent and gradually introduced changes to the workplace.

At step four, the ALJ found that the Plaintiff was unable to perform any past relevant work. Her past relevant work included work as an inspector, general, which is semiskilled work generally performed at the light exertional level. At step five, the ALJ found that Plaintiff could make a successful adjustment to other work existing in significant numbers in the national economy, such as a marker, checker 1, or routing clerk. Accordingly, the ALJ found Plaintiff not disabled and denied her applications.

On February 18, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's November 16, 2020, decision the Commissioner's final decision for purposes of judicial review under the Social Security Act. See 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981, 416.1481.

**Discussion**

The Plaintiff raises the following issue on appeal: is the ALJ's RFC determination supported by substantial evidence or is it the product of legal error where the ALJ failed to properly evaluate the opinion of consultative examiner, Harold Savell, Ph.D.? The Court finds that the issue lacks merit and the ALJ's decision should be affirmed.

The RFC assessment is based on "all of the relevant medical and other evidence" (20 C.F.R. § 416.945(a)(3)), including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 SSR LEXIS 5, at *13-14. The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence. *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007), citing *Holman v. Massanari,* 275 F.3d 43 (5th Cir. 2001).

Although Plaintiff urges this Court to remand because the ALJ did not provide an explicit discussion of the factors of supportability and consistency in the same paragraph in which he found Dr. Savell's opinion was not persuasive, the Fifth Circuit has held that "[a] case will not be remanded simply because the ALJ did not use 'magic words.'" *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Rather, "[r]emand is only appropriate 'where there is no indication the ALJ applied the correct standard." *Id*. (citation omitted). The burden is on the party claiming error to demonstrate not only that an error is present, but also that it affected her "substantial rights." *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

This Court is unpersuaded by Plaintiff's argument that the ALJ erred in his consideration of the opinion of the consultative examiner, Dr. Savell. It was within the ALJ's purview to find that Dr. Savell's opinion was unsupported because it did not comport with the Plaintiff's medical

4

records. In discussing Plaintiff's medical records in his opinion, the ALJ noted that:

> The medical records persistently document that the claimant denied anxiety, depression, sleep disturbances, and suicidal thoughts except on one occasion the claimant reported anxiety and depression (Exhibit 18F, p. 13). On one occasion the claimant was described as nervous, anxious and crying but negative for confusion (Exhibits 4F, pp. 3 and 4, 10F, p. 21 and 20F, p. 175) and on another, the claimant was described as agitated and anxious (Exhibit 17F, p 19). Dr. South remarked that the claimant complained of pain from head to toe, was very nebulous and disconnected and that she suspected some sort of personality disorder or other psychiatric overlay versus possible malingering behavior (Exhibit 11F, p 11). Nevertheless, the records continually described the claimant as alert and oriented with normal affect and mood, and normal behavior, judgment and thought content (Exhibits 3F, 4F, 10F, 12F, 13F, and 16F-18F).

Tr. [9] at p. 23.

Later in his opinion, the ALJ thoroughly reviewed Dr. Savell's consultative examination opinion, and noted a contrast between the bulk of the medical records and Dr. Savell's opinion. The ALJ found as follows:

> The claimant underwent a comprehensive mental status consultative examination in April 2019 performed by Harold Savell, Ph.D. The claimant alleged stroke, panic attacks and problems getting along with others. Dr. Savell noted that he reviewed provided medical records and those medical records indicated migraines, a stroke, and prescriptions for Norco and tramadol. Records of a brain scan indicated no acute intracranial abnormality found. The claimant related she was in CPS custody, but her mother kidnapped her, left her with a man, Antonio, in a junkyard who reared her from the age of 11 and she had no other contact with her mother after that. She related that her natural father raped her when she was small and she was shot in the back of the head by her husband. The claimant described that she was afraid of being assaulted again, startled easily, and had nightmares about people trying to kill her. She detailed that she slept excessively, had difficulty with alertness, her thoughts were worrisome, she was easily irritated and frustrated, did not want to be bothered by anyone, and was avoidant. She denied suicidal thoughts, hallucinations or delusions. She added she experienced frequent headaches, difficulty walking, passing out spells and wrote very slowly. She noted her appetite was not very good. She acknowledged that her passing out spells had slacked off on her new medication.
>
> The claimant reported that she lived in a house with her fiancé of three years and he drew disability benefits. She stated that her fiancé helped her in the shower and dress. She noted she did no chores and no longer had a driver's license and did no driving. She related she spent most of the time on the couch sleeping but sat outside

> some. She related that the television hurt her eyes but she listened some to the television. She noted that she had no visitors but that her daughter called. She was not a member of any clubs or organizations.
>
> Dr. Savell documented that the claimant was transported and accompanied by her fiancé and was a fair informant. He noted she walked with a very slow and unsteady gait with the help of her fiancé. He described that the claimant was appropriately dressed and groomed, sat awkwardly in a chair and shifted her weight frequently as if she were uncomfortable. He detailed that her speech was somewhat slurred. She knew the month of the year but not the day of the week, was aware of the town they were in and the reason she was here. Her long-term memory was good. Dr. Savell reported that the claimant became more and more restless as the session progressed, began to complain about not feeling well, was increasingly more frustrated and agitated and began to cry and insisted on needing to leave. Dr. Savell documented that because of the claimant's agitation, increased frustration, and becoming so distraught, he was not able to complete the evaluation.
>
> Nevertheless, he formed the diagnostic impressions of Posttraumatic Stress Disorder and concluded that the claimant had difficulty with motor control and suspected that she had serious physical limitations. He reported that she was not capable of interacting with the general public or coworkers, not capable of being reliable and would have considerable difficulty managing her own finances (Exhibit 7F). Pursuant to 20 CFR 404.1527 and 416.927, the undersigned considered the examining relationship, treatment relationship, supportability, consistency, specialization and other factors, if applicable. The undersigned found that Dr. Savell examined the claimant one time. However, the undersigned considered and reviewed Dr. Savell's assessment in light of his status, his expertise, and the objective medical evidence. The undersigned finds that Dr. Savell's assessment is not persuasive because Dr. Savell's examination was not finished, it is based only on a snapshot of the claimant's functioning and is not consistent and not supported by the objective medical evidence.

Tr. [9] at p. 24.

In his opinion, the ALJ further noted that Plaintiff's visit with Dr. Savell, a cooperative disability investigation report was completed. The ALJ noted:

> A cooperative disability investigation report detailed that on May 30, 2019, Mississippi Attorney General's Office (MSAGO) Investigator Jamie Thompson along with MSAGO Investigator Shannon Cook traveled to 212 South Street, Blue Mountain, Mississippi to attempt a face to face interview with the claimant. A male at the residence who identified himself as the claimant's fiancé answered the door. When asked if the claimant was home, he replied that she was not, and that a community service van had picked her up to carry her to the local doctor's office at Ripley Healthcare Associates. Investigators traveled to the doctor's office and the

6

>receptionist said that they did not see the van at all on that day and that she had not seen the claimant. Investigators contacted Chris McCallister, a probation officer for the local drug court and former chief deputy of the Tippah County Sheriff's Office. Mr. McCallister said he was very familiar with the claimant and provided essentially the following information: the claimant was a known drug abuser and had been involved with criminal activity over many years, was currently under criminal indictment for the sale of methamphetamines, had been seen driving and often traveled around alone, was usually friendly and did not exhibit any strange or bizarre behaviors unless she was high on illegal drugs, and always carried on logical conversation with him, unless she was high on drugs. Mr. McCallister said that the claimant's fiancé would "hide her out" if any type of law enforcement were looking for her and that the claimant would often feign medical problems to avoid arrest. The Investigators documented that they spoke with store workers at two (2) local convenience stores who positively identified the claimant and reported that the claimant shopped in the stores often, up to multiple times per week, was mostly friendly and had never exhibited any strange or bizarre behaviors, and came in alone, but sometimes had a male who may come into the stores with her (Exhibit 9F). When asked about the CDR investigation report at her hearing, the claimant denied what was contained in the report except she admitted she was under criminal indictment for the sale of methamphetamines. The undersigned considered the investigation report and finds that it is consistent with the preponderance of the medical evidence.
>
>In sum, the medical records document that despite the claimant's allegations of debilitating symptoms and restrictions, she received only sporadic conservative treatment for her severe impairments or symptoms suggesting that the symptoms were not as limited as expressed by the claimant and diminish the persuasion of those allegations. Moreover, the undersigned emphasizes the record does not contain any opinions from treating, examining or evaluating physicians indicating the claimant has limitations substantially greater than those determined in this decision that were not considered. After a thorough review of the evidence of record, including the claimant's allegations and testimony, forms completed at the request of Social Security, the objective medical findings, medical opinions, and other relevant evidence, the undersigned finds that the records support that the claimant is capable of performing work consistent with the residual functional capacity established in this decision (Exhibits 1F-20F).

Tr. [9] at p. 25.

For the reasons stated above, the ALJ did not err in finding Dr. Savell's opinion unpersuasive. It is evident to the undersigned that the totality of the ALJ's decision shows he properly considered the relevant factors of supportability and consistency. In finding Dr. Savell's opinion unpersuasive, the ALJ noted that "Dr. Savell examined the claimant one time. However,

7

the [ALJ] considered and reviewed Dr. Savell's assessment in light of his status, his expertise, and the objective medical evidence. The [ALJ found] that Dr. Savell's assessment [was] not persuasive because Dr. Savell's examination was not finished, it is based only on a snapshot of the claimant's functioning and is not consistent and not supported by the objective medical evidence." *See* Tr. [9] at p. 24. Thus, this Court finds that substantial evidence supports the ALJ's decision.

## Conclusion

For the reasons stated above, the undersigned finds that the Commissioner's decision should be and is hereby affirmed.

**SO ORDERED** this, the 30th day of March, 2022.

/s/ Jane M. Virden
United States Magistrate Judge